UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Estate of Ahmed M. Guled, by and
through Mohamed G. Abdi, special
administrator,

                    Plaintiff,

v.

City of Minneapolis, *et al.*,

                    Defendants.

Civ. No. 14-4674 (RHK/TNL)
**MEMORANDUM OPINION
AND ORDER**

---

Zorislav R. Leyderman, Law Office of Zorislav R. Leyderman, Minneapolis, Minnesota, for Plaintiff.

Gregory P. Sautter, Sarah C. S. McLaren, Office of the Minneapolis City Attorney, Minneapolis, Minnesota, for Defendants.

---

Minneapolis police officers shot and killed Ahmed Guled on February 5, 2009. Guled's father, Mohamed Abdi, acting as the "special administrator" of Guled's estate, later commenced the instant action against the officers involved and the City of Minneapolis (the "City"), alleging that the shooting amounted to excessive force in violation of the Fourth and Fourteenth Amendments to the United States Constitution. Defendants now move for summary judgment, arguing *inter alia* that Abdi lacks standing. For the reasons that follow, their Motion will be granted.

## BACKGROUND

There is no dispute that on February 5, 2009, officers shot and killed Guled following a car chase, although the events culminating in the officers' use of force are not

particularly relevant to the instant Motion.  In 2012, Abdi brought a *pro se* lawsuit in this Court styled as Abdi v. Garbisch, Civ. No. 12-306 ("Abdi I"), against the City and several police officers.  The Complaint alleged that the defendants had used "excessive, unreasonable and deadly/lethal force" against Guled, in violation of the Fourth and Fourteenth Amendments.  Abdi filed the Complaint as "trustee for the heirs and next-of-kin of" Guled, for whom he alleged he had standing to sue because he had been "duly appointed as trustee" by the Hennepin County District Court.  He sought damages for "extreme emotional distress, pecuniary loss, [and] the loss of [Guled's] aid, comfort, society, companionship, guidance and protection."  On September 10, 2013, Abdi I was dismissed without prejudice after Abdi failed to prosecute the case.

In 2014, Abdi sued again, this time with the aid of counsel.  His second case, styled Guled v. City of Minneapolis, Civ. No. 14-1897 ("Abdi II"), also alleged that the defendants had used "excessive and deadly force" in violation of the Fourth and Fourteenth Amendments.  This time, however, Abdi sought damages for *Guled's* pain, suffering, and death, rather than for losses sustained by his heirs and next of kin.  The caption in Abdi II identified Abdi as the "Trustee" for Guled, but unlike Abdi I, the Complaint contained no allegations regarding Abdi having been appointed as trustee.

According to Abdi's counsel, shortly after filing Abdi II, he learned that Abdi's status as trustee had been revoked by the Hennepin County District Court.  To obtain trustee status, Abdi had submitted a petition purportedly signed by Weli Guled, Ahmed Guled's son, as required by Minnesota Statutes § 573.02.  However, Weli Guled later came forward and informed the court that the signature on the petition was not genuine,

and the court subsequently revoked Abdi's appointment as trustee.[1] As a result of this development, counsel requested that <u>Abdi II</u> be temporarily stayed while Abdi sought reappointment as trustee or, in the alternative, that the action be dismissed without prejudice. The Court took the latter course and dismissed the action without prejudice on July 31, 2014.

It appears that Abdi was unsuccessful in re-obtaining trustee status.[2] Nevertheless, on November 15, 2014, he sued once again, commencing the instant action as the "Special Administrator for the Estate of [Guled]." In this third bite at the apple, Abdi makes the same factual allegations, invokes the same constitutional provisions, identifies the same injuries, and requests the same relief as in <u>Abdi II</u>. The only difference between this case and <u>Abdi II</u> is Abdi's alleged status as "special administrator" versus "trustee."

The parties then undertook discovery, and with that discovery now complete, the City has moved for summary judgment, arguing *inter alia* that Abdi lacks standing to bring his claims. The parties have fully briefed this issue and it is ripe for disposition.[3]

---

[1] Defendants intimate that Abdi deliberately misled the state court by submitting a forged document, while Abdi's counsel avers that Abdi speaks limited English and the signature issue was not an intentional effort to deceive. Ultimately, all that matters here is that Abdi's status as trustee was revoked by the Hennepin County District Court.

[2] No party has informed the Court whether Abdi in fact sought reappointment as trustee and, if so, the outcome of those efforts.

[3] Abdi complains that Defendants could have raised the standing issue much earlier in this litigation, well before the parties spent more than a year on discovery. He is likely correct. But that does not change the fact that the Court must address standing now, as it implicates the Court's subject-matter jurisdiction, e.g., <u>Faibisch v. Univ. of Minn.</u>, 304 F.3d 797, 801 (8th Cir. 2002), and challenges to jurisdiction may be raised at any time, see Fed. R. Civ. P. 12(h)(3).

## ANALYSIS

To fully appreciate the standing issue, it is necessary to discuss some background regarding the controlling legal framework and the precise nature of Abdi's claims.

Abdi alleges in this action that the City and its officers deprived Guled of his Fourth and Fourteenth Amendment rights by using excessive force, claims he brings under 42 U.S.C. § 1983. As noted above, in his initial *pro se* lawsuit, Abdi brought these claims on behalf of Guled's heirs and next of kin. The claims in both Abdi II and in this action, however, were brought on *Guled's* behalf, seeking damages for *Guled's* pain, suffering and emotional distress after he was shot. The difference in these types of claims was spelled out succinctly by the Sixth Circuit in Jaco v. Bloechle, 739 F.2d 239 (6th Cir. 1984):

> It is perhaps appropriate at this juncture to distinguish between survival actions and wrongful death actions. . . . A survival claim is predicated upon the *decedent's* claim for damages sustained during his lifetime. On the other hand, a wrongful death action creates a new and separate claim or cause of action for the damages sustained by [the] decedent's *estate* as a result of his death.

Id. at 242 (emphases added). Hence, in this case Abdi is attempting to bring "survival" claims on Guled's behalf, and not wrongful-death claims on behalf of Guled's heirs. (See also Doc. No. 40 at 6 ("Plaintiff is pursuing a 'survival' claim and not a claim for 'wrongful death.'").)

The problem this creates is that although Abdi asserts "survival" claims on Guled's behalf, Guled has passed away. The claims, therefore, fall within a gap created by federal law. Section 1983 provides that a state actor who infringes an individual's

constitutional rights is liable to "the party injured." "The appropriate plaintiff" for such a claim "is obvious when a party survives his injuries," but the text of § 1983 "makes no mention of permissible plaintiffs when the injured party dies." Andrews v. Neer, 253 F.3d 1052, 1056 (8th Cir. 2001); accord Robertson v. Wegmann, 436 U.S. 584, 587 (1978). Due to this "deficiency" in the statute, Congress has directed courts to fill the gap by following "the common law, as modified and changed by the constitution and statutes of the [forum] State, so far as the same is not inconsistent with the Constitution and the laws of the United States." 42 U.S.C. § 1988; accord Andrews, 253 F.3d at 1056-57. In other words, this Court must look to Minnesota law to determine whether Abdi may properly assert the claims in this case.

Historically, all personal-injury claims in Minnesota abated upon the death of the injured party. Ortiz v. Gavenda, 590 N.W.2d 119, 121 (Minn. 1999). Like most other states, however, Minnesota has modified this common-law rule to allow survival of personal-injury claims under certain circumstances: "A cause of action arising out of an injury to the person dies with the person of the party in whose favor it exists, *except as provided in section 573.02.*" Minn. Stat. § 573.01 (emphasis added). Section 573.02, in turn, provides in relevant part that "[w]hen death is caused by the wrongful act or omission of any person . . ., *the trustee appointed as provided [by statute]* may maintain an action therefor if the decedent might have maintained an action, had the decedent lived, for an injury caused by the wrongful act or omission." (emphasis added). Hence, Minnesota law is clear: any "survival" claim for injuries sustained by Guled abated with his death, except those that may be maintained by a court-appointed trustee. Abdi

acknowledges this in his brief. (See Doc. No. 40 at 18 (noting that his claims "abated at Mr. Guled's death and died with Mr. Guled").) And because he is no longer the trustee, Abdi lacks standing to bring the claims in this action.

While this might appear to end the analysis, things are not quite that simple. As noted above, the Court must apply Minnesota law to determine whether Abdi enjoys standing, but only as long as it "is not inconsistent with the Constitution and the laws of the United States." 42 U.S.C. § 1988. In other words, the Court must compare Minnesota law with the policies behind § 1983, which include deterring abuses of power by those acting under color of state law and providing a remedy for unconstitutional conduct. Robertson, 436 U.S. at 591. If the Court finds application of Minnesota law inconsistent with those policies, it should not be applied. Id. When conducting this comparison, the Court must remain mindful that the issue is not whether the result *in this case* would be inconsistent with § 1983, but rather whether Minnesota's statutory *scheme* is inconsistent with § 1983. A state statute cannot be considered "inconsistent" with federal law merely because it causes the plaintiff to lose the litigation. Id. at 593. Indeed, if success of the action were the only benchmark, "there would be no reason at all to look to state law, for the appropriate rule would then always be the one favoring the plaintiff, and its source would be essentially irrelevant." Id.

Here, Abdi argues that applying Sections 573.01 and 573.02 would be inconsistent with the purposes underlying Section 1983. (Doc. No. 40 at 18.) He notes that when an injured party dies, two things happen: first, the party's "survival" claim is automatically abated, and second, litigation is left to a trustee appointed under § 573.02, but the

- 6 -

damages available to the trustee are limited by state law to (i) "pecuniary loss," a species of damages that includes "loss of aid, advice, comfort, and protection" suffered by the decedent's next of kin, and (ii) "probable [financial] contributions which the next of kin could reasonably expect from the decedent during the decedent's life." (Id. at 13 (citations omitted).) In other words, § 573.02 limits damages to those suffered by the decedent's *heirs*, and not those incurred by the decedent *himself*, because the statute creates a type of wrongful-death claim and abates any "survival" claim. See Johnson v. Consol. Freightways, Inc., 420 N.W.2d 608, 613 (Minn. 1988) (noting that § 573.02 "does not allow survival of [a] decedent's action, but rather creates an entirely new cause of action, the beneficiaries of which are third parties claiming pecuniary loss from the wrongdoer's act"). Because of these damages limitations, and because a trustee cannot recover for the decedent's own pre-death pain and suffering (due to abatement of the "survival" claim), Abdi contends Minnesota law is "completely incapable of achieving the policies" underlying Section 1983 and must not be applied to deprive him of standing here. While a creative argument, the Court disagrees with it.

As an initial matter, it is not clear that the *damages* limitations in § 573.02 necessarily carry over to a federal civil-rights action such as this one. While the Court looks to § 573.02 for *standing* purposes, as a result of § 1983 being "deficient" with respect to who may bring a claim, Abdi cites no authority for the proposition that federal law is similarly deficient with respect to *damages* such that state law would control. See Andrews, 253 F.3d at 1063-64 (declining to allow the "measure of damages in Andrews's suit to be entirely defined by" state law).

In any event, the Court perceives no conflict even if, as Abdi assumes, the limitation on damages contained in § 573.02 carries over to a § 1983 action.  Damages remain available to the duly-appointed trustee for the allegedly unconstitutional conduct, albeit in a potentially lower amount than otherwise might have been available through a "survival" claim, and deterrence is well-served by the prospect of such an award.  See Carlson v. Green, 446 U.S. 14, 21 (1980) ("It is almost axiomatic that the threat of damages has a deterrent effect.").  Furthermore, punitive damages, which serve both a compensatory and a deterrent function, are available under state law.  See Minn. Stat. § 573.02, subd. 1.  As a result, at least two judges of this Court have determined that "no provision of Minn. Stat. § 573.02 operates to disturb the legislative purposes of § 1983." Sheeley v. City of Austin, Civ. No. 12-2525, 2015 WL 3576115, at *5 (D. Minn. June 5, 2015) (Montgomery, J.); accord Crocker v. City of Minneapolis, No. 4-85-923, 1986 WL 266, at *2 (D. Minn. July 3, 1986) (Murphy, J.).

Nor does the Court find any contradiction with § 1983 from the fact that an action to vindicate a decedent's constitutional rights must be brought by a trustee.  In the Court's view, the deterrent and compensatory purposes of § 1983 are vindicated regardless of *who* brings a claim against the wrongdoer.  Indeed, when an individual has died at the hands of a state actor, it is axiomatic that *he* can no longer be compensated for his injuries; the recovery from any successful litigation will inure to his estate and, indirectly, his heirs and next of kin.

In support of his argument that the Court should not apply Minnesota law, Abdi relies upon Carlson, in which the trial court concluded that a Bivens claim – a type of tort

claim against federal officials for unconstitutional conduct – abated upon the death of the injured party under Indiana law. Id. at 25. The Supreme Court determined that Indiana law was inconsistent with § 1983 and should not have been applied. Yet, Carlson reached that conclusion only because "Bivens actions are a creation of federal law and, therefore, the question whether respondent's action survived [the decedent's] death is a question of *federal* law." Id. at 23 (emphasis added). And according to the high Court, "only a uniform federal rule of survivorship will suffice to redress the constitutional deprivation here and to protect against repetition of such conduct." Id. at 24; see also id. ("[T]he liability of federal agents for violation of constitutional rights should not depend upon where the violation occurred.").

Carlson is inapposite. In contrast to the uniquely federal nature of the claim asserted in that case, here the Court is expressly directed to look to *state* law, meaning Carlson's goal of uniformity would be impossible to achieve. Variations will inevitably exist whenever a federal court is directed by Congress to apply the law of the forum state. See id. at 29 (Powell, J., concurring) ("It is not 'obvious' to me, however, that 'the liability of federal officials for violations of citizens' constitutional rights should be governed by uniform rules' in every case. On the contrary, federal courts routinely refer to state law to fill the procedural gaps in national remedial schemes.") (citations omitted). Had Congress wanted uniformity for § 1983 actions, it could have said so expressly in § 1988. See Estate of Gilliam *ex rel.* Waldroup v. City of Prattville, 639 F.3d 1041, 1049 (11th Cir. 2011). But it did not do so, leaving the survival of actions to the vagaries of state law. See Robertson, 436 U.S. at 593 n.11 (§ 1988's "reliance on state law obviously

- 9 -

...

means that there will not be nationwide uniformity"). Carlson's determination that state law should not apply to Bivens actions simply does not aid Abdi's cause here.

## CONCLUSION

At bottom, it appears that Abdi's real complaint in this case is not that Minnesota law renders it impossible to vindicate the purposes behind Section 1983. Rather, it is that *he* is no longer the person to do so, because he has lost his status as trustee – a problem of his own making. Had Abdi not had that status stripped by the state court, he would remain free to litigate against Defendants pursuant to § 573.02 (as incorporated by § 1988).[4] Indeed, § 1983 claims are regularly litigated in this Court by trustees of individuals who have passed away. That Abdi lost such status does not render Minnesota law inconsistent with federal law. Rather, it simply means he lacks standing and his claims must be dismissed.

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. No. 27) is **GRANTED** and the Complaint (Doc. No. 1) is **DISMISSED WITHOUT PREJUDICE**. Plaintiff's Motion for Partial Summary Judgment (Doc. No. 36) is **DENIED AS MOOT**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 18, 2016                           s/Richard H. Kyle
                                                RICHARD H. KYLE
                                                United States District Judge

---

[4] Abdi likely recognizes this, as he alleged in both Abdi I and Abdi II that he *was* the trustee.